Case numbers 16-2168 and 16-2406, Nasser Beydoun and Maan Bazzi, respectively, versus Jefferson B Sessions et al. Oral argument not to exceed 20 minutes per side. Nabi Ayyad, for the appellant, you may proceed. Good morning, Judge. Good morning. We appealed the decision both on Mr. and I don't know if Your Honors would prefer I address each case separately. I mean, the issues are almost identically alike, so I would just prefer that I just address them in general as to both of them as I'm speaking. That would be fine, and if we have questions going to individual cases, we can ask those. Thank you, Judge. The lower courts dismissed it, both Judge Levy and Judge Cox dismissed on subject matter jurisdiction. In essence, Judge Cox's decision literally just followed Judge Levy's decision almost word for word. In Moogdad, this court, this Honors Court, ruled that the district courts do have subject matter jurisdiction to address the issue of an individual being placed on the no-fly or what we watch list, what we call the watch list. In Moogdad, it would address specifically the no-fly list, although the court in Moogdad did not make a distinction between the no-fly list or watch list. Even though I handled the Moogdad case, it was allegedly, even in that complaint, we alleged the no-fly list or any list basically being placed on there. So that court upheld the fact that, reversed the lower court saying that you could argue that being placed on the terrorist watch list or the terrorist no-fly list. Just preliminarily, you're not challenging the procedures for getting off the no-fly list, as I understand. You're only challenging your client's placement on the list. Is that right? That's correct, Your Honor. Okay, so for your client to have a claim, you would have to establish that the additional screening procedures to which your clients are being subjected constitutes an unconstitutional invasion of their rights. That is correct, Your Honor. Actually, when I look at the allegations, the only thing you have to say on behalf of your clients is that they were delayed in taking their flights or delayed going through the checkpoint, and that's about it. In that you don't give specific dates and specific problems that were encountered by your clients. So one would have to ask how does the problems incurred by your clients reach constitutional magnitude. Can you address that? Yes, Your Honor. Well, one of the complaints we did list as the detail, the travel of the Mr. Bazzi, Ma'an Bazzi case. Mr. Badoon was a little bit more general because it happens to him quite the time, and I think that could have been resolved by allowing the amended complaint to address the particular dates as to Mr. Badoon. But that said, Your Honor— Well, you said that they—I mean, mostly you're saying they were deterred from flights because they didn't want to go through the extra screening procedures, but we don't have specific flights that they missed or identified or anything like that. And I think when Mr. Badoon, you said he missed countless flights, but that was because—well, I'm not sure why. It's not specifically explained except to suggest that he was deterred because he didn't want to go through the screening procedure. Well, Your Honor, I know that Mr. Ma'an Bazzi did indicate that he just didn't want to fly anymore because he was at that particular trip because he just didn't want to go through the humiliation and the harassment at the airport, Your Honor. And with all due respect, Judge, the fact— What is the humiliation and harassment other than he is subject to extra screening? Well, that's one thing if everyone had to go through it, Your Honor, but not everyone's going through it. They select people random, don't they, for extra screening, even people that aren't on lists? But this is not random, Your Honor. I know, but so that's demeaning, humiliating? I mean, if you're randomly selected as well? No, we didn't say randomly selected, Your Honor. That's the problem. They're not randomly selected. No one knows that. No one knows that. I mean, I go through, I get selected. You go through, you get selected. No one knows whether we're on some list or we're getting selected. And the other problem you have is TSC puts you on the list, so if it's just being subject to extra screening that you have a constitutional violation, then maybe you have a claim against TSC. But if what you're talking about is in particular circumstances, TSA held you longer, TSA's not in front of us, right? No, but it's TSC that puts you on their list, Your Honor. But TSA's the one who does the screening, correct? They do the screening on behalf of the TSC. I understand that, but you could have a Bivens claim. If someone does awful things to you, a law enforcement officer, you probably have a Bivens claim. Because they can't unreasonably detain you under the Fourth Amendment. Now, that's a Bivens particular facts case. But what you're suing for is you're saying TSC violated my rights by putting me on the list. But as Judge Griffin said, all they're subjecting you to is a little bit of extra screening as a result. That happens to all of us. With all due respect, Your Honor, I think you're underestimating the effect that it has on human dignity, Your Honor. It's as if, Ken, if I walk down the street to the Secretary of State, and because I'm on this so-called list for the Secretary of State, I have to sit there and wait three, four, five hours to be subject to questioning, humiliating questions, because I am who I am. And you won't tell me who I am. Neither this Court can even possibly look into it. So I get that. And if that's occurring, then it seems to me, as Judge Clay said, you lay out the facts, you let a court see them, and you bring a Bivens action for them violating your Fourth Amendment rights. But if what's occurring is simply by being placed on the list, all TSC is authorized by placing you on a selectee list. It's different than a no-fly list, because that could impede your right to travel. All they're doing here is saying, you, like so many of your fellow citizens who are randomly selected, you're going to be selected every time. I get the difference. But my point is, if the screening is just what they're doing, as Judge Griffin said, to people that come through and they randomly select, then what I'm saying is you have no claim against TSC. And if TSA is doing something more, your claim is against TSA. Jonah, you're using the word random. This is not random. They're putting you specifically – they made a determination, facts that we don't know. They're saying not even – the court can even know what those lists are. What that does, when you operate in the dark, that allows the government basically operating in the dark, put whoever they want as they please. We don't know if they're doing it because this individual is Arab American, Hispanic American, Arab American. That's the problem with that. We're allowing them to operate. And they're saying we don't want to say that there is a list. What is your constitutional claim? I mean, you're allegedly denial of the right to travel. But do you have – I mean, you don't have an equal protection claim, do you? I mean, what are your other constitutional claims other than denial of the right to travel? It's a due process, Your Honor, before you take away my right and hinder my ability to travel. Your right of what? Your right to travel? Free of humiliation and free of harassment, Your Honor. Why is it that I have to be subject? If my name, Mr. Nabi Ayad, has to go through an airport and Mr. Judge Griffin can go to the airport, I have to be subject to three, four hours, possibly miss a flight if I have business dealings or what have you, and no one else has to just because that, and I can't get any answers from anyone. You don't operate like that in the United States of America. And I may completely agree with you on that, but the way – see, what you've got to do for us, I get what you're trying to argue, but what you have to do for us, you have to think about this holistically. If what you're trying to argue is by being placed on the list, you're subject to extra screening, and that screening is no different, and I get you're going through it every time, but it's no different than someone that's randomly selected. They're not impeding your right to travel because everyone randomly selected, when they're randomly selected, could bring that claim. And they're not impeding your due process rights because there's no liberty interest at stake if it's not the right to travel that you've identified. Okay, so if you set that aside, if what they're doing is detaining you for four to five hours, then what you have is an independent Fourth Amendment violation claim for that particular case that you could try and bring, and it's under Bivens, and it's against the individual agents because I couldn't find, and I looked, and maybe you can point me to a reg or a rule that allows them to detain you for four to five hours. What I found is that it allows for extra screening. Well, extra screening, as Judge Griffin said, we're all subject to. That's not necessarily true, Judge. I've been traveling for the last many, many years. I haven't been subject to extra screening. Well, I have. But if it's Mr. Beydoun or Mr. Bazzi, each and every time, that is the distinctive factor. That's not the way the Constitution works. In other words, if you've got a liberty interest, it's the right to travel. And if all they're doing is impeding slightly the right to travel in a way they do it to random people and people on the list. I don't think that's a fair comparison, Your Honor, with all due respect, just because once in a great while someone is. And by the way, we don't know the time. But you've got to ignore that. Let's assume the same day I go through and Mr. Beydoun goes through, and we both get picked for extra screening. Him because he's on the list, me because I'm selected randomly. We both go through, and we both leave at the same time. There's no constitutional violation by the government. Well, first of all, Your Honor, I don't know if it's, I think the selectee list, it's considerably more than just additional screening where someone's just picked out randomly, Your Honor. My understanding, some of my clients have stayed three, four hours, have missed flights and things of this nature. That's more than just random. But this goes back to Judge Clay's question. You haven't identified a difference by rule or by facts of every time. And if, again, what they're doing, you may have a Bivens Fourth Amendment claim if what they're doing is unreasonably detaining you. But, Your Honor, the fact still remains that they're doing this without allowing you an opportunity before they take away this right, before they hinder your ability to travel, without addressing the issues at hand. But some hindrance to travel is all right under the right to travel. In fact, there's an argument they could take away your right to fly because you can drive and take boats. That's a challenge to the redress procedure, right, what you just said? Not necessarily, Your Honor. Well, it sounds to me like that's what you. I guess. You've abandoned your claim, your challenge to the redress procedure, have you not? Yes. Congress has spoken about under 46110 that, in fact, that's to be held by the Court of Appeals. But we're not challenging that. We're challenging the TSC's placement on that list. And the thing is we don't know why they place it, how they place it. The reason they placed it, the stigma that comes with it. I mean, there's no one going to deny that. It's a huge stigma by being named a terrorist or it has ties to terrorism. Regardless of whether you're traveling with business associates, employees, colleagues, family, it's just there's a huge stigma that is placed on there. And we're allowing the government a rein free as to they could do this without no checks and balances on it. And I think there's something fundamentally inherently wrong in that. Because you're deterring. Every one of these individuals says, I don't want to fly anymore. They are deterring their abilities to fly. They are hindering their abilities to fly. And the government hasn't shown any case where it said that just a simple small delay, I can understand some sort of reason for the delay that's understandable to hinder the ability to flight. Counsel, your clients did not go through the TSA redress procedure before coming to federal court. Is there a particular reason why they didn't go through the redress procedure? They have, Your Honor. Both have. They have. And I can tell you this, Your Honor, plus we have a hotline under the Arab American Civil Rights League. Not one of those individuals that ever went through that procedure has ever been removed through that procedure. Well, you're not, you don't have any allegations in this case here regarding defects with the TSA redress procedure. You don't have that in the case here. Well, again, we argue that the TSA can't really do much about it. It's really the TSA that does. But it does. But why not? TSA covers redress. Yeah, they give a vague, we did allege that in here, Your Honor. So they give a vague, confusing letter that neither confirms or denies that you're even on their list and basically says we'll check our record and that's it. But that's not still before the court because you're not pursuing that on appeal, are you? No, Your Honor. Okay. Why not? Why aren't you pursuing TSA? Why aren't you exhausting and coming to this court? Because, again, 461 does not allow me to do it under TSA. And second, it's futile because, again, they're still operating in the dark. You cannot, there's no way that you can see what basis that they made a decision to remove you or add you, to remove you from that list. Go ahead, I'm sorry. Well, that's your challenge to the redress procedure. That's the challenge to the redress procedure, which we're not doing. I think that's actually your better claim here, but it's not even before us. And, yes, it has to be brought in the court of appeals. That is correct, Your Honor. I would think that, you know, I think that's what your, you know, the really basis of your complaints are, is that my clients are on this list but there is no redress for them to get off the list. But our problem is we only adjudicate the claims that are presented to us. Well, this is a claim presented to you. Someone's violating my rights. Well, you're on the front half of it. I never should have been put on it in the beginning because it impedes my right to travel. And even the redress, I mean, that's a separate argument as to the redress process itself. But, again, you know, I know that the briefs speak for themselves, Your Honor, but there's just something fundamentally inherently wrong allowing the government to do this without the ability to ask someone, why am I on this list? And you've got to remember what the mindset of these individuals are. They start thinking not just I can't fly. Okay, I'm associated with terrorism. Is it because I'm paying my taxes or not? Did someone make false allegations? All of these mindsets start rolling through this person's mindset and their family's, and it affects them on a daily basis. It's very significant. I don't want it just to sound, Your Honor, as if it's just a minor, you know, delay. When I'm associated with terrorism, my good name is associated with that serious. Thank you. Thank you. We're going to hear from opposing counsel, if that's all right. Are these individuals on the no-fly list? Well, there's no allegation about the no-fly list in this case, Your Honor. It's only about the selectee list, which is different. Well, I didn't ask you that. I just asked you if they were on the list. On the no-fly list? Yeah. I don't think there's anything in the record one way or the other about this case. I didn't ask you if it was in the record. I just asked you if they were on the no-fly list. I guess we're not speaking the same language here. Let me put it this way, Your Honor. The complaint itself says they were permitted to fly, which they wouldn't be able to do if they were on the no-fly list. Say that again. The complaints themselves, the plaintiffs say they were permitted to board a flight and fly. If you are on the no-fly list, you're not permitted to board a flight and fly. So, no. Are they on an enhanced screening list separate from the no-fly list? The government does not publicly disclose whether someone's on the selectee list or not, so I can't answer that question on the public record, Your Honor. But I think that – Are they subject, as a result of being placed on the selectee list, to more screening than someone randomly selected at the airport? No. I think someone who's randomly selected for enhanced screening would get – it's not a different kind of enhanced screening, no. Does it last three or four hours? Excuse me? Does enhanced screening last three or four hours? Not as far as I know, Your Honor. There's no allegation about three or four hours in this case. That's true. There's a lot that came out of oral argument that's not really in the record. Well, I mean, let's look at the complaint, because the operative complaint is what you look at for the allegations that you would – How much in general would it enhance screening? How long duration on average? I don't have an answer for what the average is. I don't know. I think it would depend on particular circumstances of a person. But in this case, we deal with the facts as alleged in this complaint. But can I ask you – I get that. But I just want to understand the process. So they get placed on a selectee list. Are they subject at the airport to more screening than someone randomly selected? So if I go through and Mr. Badoon goes through, and we're back-to-back, and they say this guy's getting randomly selected, and they pull me aside and give me the 10-minute shakedown, is Mr. Badoon subject to the same 10-minute shakedown because he's on the selectee list, or is he subject to something more than the 10-minute shakedown? Well, let me answer that this way, Your Honor. Someone who's randomly selected doesn't get a different kind of enhanced screening. But I think what an enhanced screening would involve and how long it would last would depend on the particular circumstances of each individual screening, what happened during that, what they saw. Let's say they look at luggage. It depends on what you see in the luggage. Just like if your bag goes through the x-ray machine and my bag goes through the x-ray machine, how long the examination takes depends on what's in the bag and what the officer sees. So I understand that. So Mr. Badoon goes through. Does he get his bag searched and wanded? Because with me, when I go through, they rarely bother with my bag. They just wand me if they want to do the enhanced screening, or they pull me aside, but they don't check my bag. It sits there, right? Right. And so does it mean if you're on the selectee list, they're going to do the full monty to you? Well, I think, again, I think it depends on the circumstances. An officer has to make a judgment at the time based on what he or she sees. And so I can't answer that as if you're on the selectee list. So what you're telling me is being on the selectee list does not subject you to a certain heightened screening. It's just like anyone else. What I'm saying is that there's no specific rule about how long an enhanced screening takes or exactly what they do. But I can tell you what we have is allegations in the complaint, and I think when you're judging the sufficiency of whether a claim was stated in this case, you have to look at the complaint. So let's look at the complaint. First of all, Beydoun, that complaint doesn't allege a single fact about what was involved in any kind of screening. It describes them with adjectives, calling it grueling or burdensome, but it doesn't actually say what happened. Bozzi has two pages, pages 10 and 11, of the complaint that describe what happened. And other than looking at the luggage, and it didn't say what that involved, it talks about delays that range from 10 minutes to one hour. There's nothing about three to four hours, which I don't think would make a constitutional difference anyway, but we're talking about minutes up to 60 minutes at most. And there's no way that that implicates a liberty interest or any kind of right to travel under this court or any other court's precedent that I'm aware of. It's no different from many delays that travelers who go through regular screening entail. It's no different from even when you show up at this court, you have to show up a half an hour earlier, and then you wait for your case to be heard. I waited for over an hour for this case to be heard, and I don't mean that as any disrespect, just that these are delays that happen in life and delays that happen in travel. But that doesn't impugn your rights. What they're alleging is that it impugns my right to travel if every time you're delaying me in such a significant way that I miss my flights, and it harms my right, the stigma plus, that this is a stigma plus by placing me on this list without any process. You're doing it in the dark, and you're not allowing me to have any say in that before I'm on this list and I'm subject to something that all my fellow citizens are not. Well, let me – there's a couple of different parts of that, and let me deal with them. First of all, the you're not letting me have any say. That goes to the process and what you get before the alleged deprivation, which they've just conceded is no longer part of this case. What do you mean they've conceded? Well, they just said they're not challenging the adequacy of the process. They're challenging the inclusion on the list. No, they're challenging the fact that they're being excluded from the process in making a determination as to whether you go on the list. That's the only thing they really can challenge right now because TSC is the only entity in front of us. Well, let me try to back up and get to that at the back end first. Let's talk about delay first. In order to have a claim here, they have to show a liberty interest. So the question would be is there a liberty interest in having a delay-free travel when you're flying? You can phrase it that way or you can say you have a right to travel and the government is impeding it and, in effect, taking it away because they're putting me on this list. That's their argument because the way you phrase it, you win every time. Well, the Supreme Court and this court has made it clear that you have to define the liberty interest very carefully and very narrowly according to what's being actually alleged in the complaint and not in very general broad things or otherwise you'd always have a liberty interest. And so you have to look here and ask whether the ten-minute delay or the hour delay is itself a liberty interest. And I think you have to look at that in the context of what you're talking about, airline travel, the kind of delays and burdens that every traveler faces when they go to an airport and everyone goes through some form of screening and everyone has a risk of enhanced screening through random selection or because they do something suspicious at the airport that triggers extra scrutiny or the metal detector goes off. So you have to think about that context and then you look at the specific facts. Is a ten-minute delay something that impedes the right to travel to a constitutional magnitude? I don't think that it does. And in terms of did they miss flights, they actually describe in the complaint the flights that they made. All they say is that they were delayed as to it. And if someone misses a flight because of ten-minute search, that's not necessarily has anything to do with the government. The problem is their complaint. They showed up late at the airport. I get it. Their complaints are a problem and you kind of get hung with that. But let me turn you to the stigma plus because the complaints cause a problem for the plaintiff that they probably can't undo. But in the Quinn case, the Sixth Circuit said that stigma plus is a reputation harm, some alteration of a writer's status that accompanies damage to the reputation. And what they're saying is being placed on this list and being subject and knowing you're on this list and being subject every time you go through, you dread it, it affects your reputation, it affects your stigma. I mean, there's no doubt. There's two things you can be called in this country that make you awful, child molester and terrorist, right? And so if people think they're a terrorist because they're on this list, that harms them. Well, first of all, Your Honor, in order to have a stigma plus claim, you need to have dissemination of whatever the alleged stigma is. And the actual allegation here is what we said is there's no confirmation or denial whether you're on the selectee list. We don't tell anyone. So there's actually the opposite of dissemination. We keep it secret. Number two, getting screened, there's virtually no stigma. That's a quote from then-Judge Alito from the Hartwell case in the Third Circuit because everyone goes through screening. And some people go through enhanced screening. And when you get enhanced screening, you're allowed, if you're concerned about this, to request a private room to have the screening. And in fact, in Mr. Bozzi's complaint, it says that it was done in private. So he specifically asked for that. And then on top of that, even if you had stigma, which we don't think there is, and it was disseminated, which it wasn't, you have to have a plus, an alteration of a legal right, which there was not here because he was permitted to fly just like everyone else. So there's no stigma, and there's no plus, and therefore no stigma plus theory under the Due Process Clause. And I'd like to just return to the last point that you made when we were talking about the adequacy of the redress process. Because I'm a little bit confused about what's actually in the complaint now, and there might be some confusion. So I just want to address sort of a little bit more completely. Number one, if there was a complaint about the adequacy of the redress process under the Due Process Clause, this court held in Mockdad that you must name TSA as a defendant in that suit. And there's no dispute that Mr. Plaintiff Badoon did not do that. And therefore, Mockdad is squarely on point. Could he, not in this case, but he could, right, challenge the redress procedure and basically skip the district court and it would come here, right? Put it in simple English. Yes, I believe that that kind of a claim would be properly filed under Section 46.110 in a petition for review in the Court of Appeals. The district court would not have jurisdiction under that claim. And that is why the district court in Bozzi dismissed that claim, even though TSA was named as a defendant. So we think that that was proper. And in fact, I don't know whether he's still challenging the adequacy of redress process or not, but there certainly has been no argument that the district court had subject matter jurisdiction over that claim if it was brought. And since he's not disputing it, and I think Your Honor understands that that's correct, I think that this court should hold that that kind of a claim needs to be brought under 46.110. Well, I mean, here he abandoned the claim in district court and he hasn't appealed it. So rather than us having holding on the subject matter jurisdiction, I mean, the easier route, is it not, that the issue just isn't before us? We would take a win on that ground as well, Your Honor. Okay. I mean, that's, you know. Yeah, I mean, I think it would help to have a holding in the sense of there may be. Well, sure, it would help, but we normally don't have holdings on issues that are not before us. That's all. No. That are not argued, not preserved, not challenged. That's true. And my only point was in that I think everyone is imagining that there will be future litigation. I think it would be helpful for the court to clarify, but I don't want to push the issue. We'd be happy for you to say that the claim was simply abandoned and, you know, affirm on that ground as well. If the court has any further questions, I'm happy to answer them. If not, I would just ask that you affirm the judgment below. All right. Thank you. Thank you very much, Your Honor. Just a couple points, Your Honor. The 461110 is flawed in and of itself. There's already holdings across this country that said they can't remove the individual. If I brought against the TSA and went with the huge hurdle of arguing before the Court of Appeals on this issue, they can't remove them. It would be futile. It is the TSC that can remove them, not the TSA. So, you know, that's already been established. The fact is, you know, there's a good point as to we want to keep lying. Where is that established at? We don't have anything on that, do we? That's what basically we argued that in Mukded, Your Honor. Oh, okay, you've talked about Mukded. You know, the fact that the lower courts dismissed it on subject matter jurisdiction, not discovery issue, we were not allowed to have discovery to bring all this information in as to how much time and effort and things of this nature the individual has to. You can put that in your complaint. You can interview your client and put it in your complaint. We did on one of those things. But we were arguing more that the fact that he was on this list without the due process on the Fifth Amendment. Due process, go back and read it. It says you are not to be denied process if you have a liberty interest, property interest, or something. You have to put the facts that establish the liberty interest and how that's being impugned before you ever get to the process. You're putting the cart before the horse. They could have allowed us to, as opposed to dismissing it for subject matter, Your Honor, they could have dismissed it basically and allowed us to amend our complaint under the court rules under those circumstances. There's two important factors here. Brother Counsel, I don't know whether he flew from D.C. to come over here from the USA's office. The fact is we make a conscious decision. When I go to Chicago, I go to New York, I make a conscious decision whether I should drive or whether I should fly. I came from Detroit this morning. I drove because I knew, I made a conscious decision. If I go through the airport, there may be a possibility of delay and what have you. The fact, this is what's going through the mindset when we talk about the stigma plus doctrine. These individuals are being hindered their ability to fly because each time that they fly, they think, well, I may have to stay another hour. Now, we argued here that this particular case is an hour. Other cases will be much longer, two, three hours. But the fact is, so I may not want to take a flight to be delayed for two, three hours. I'm sure Brother Counsel doesn't want to be delayed each and every time, be questioned all the time, each and every time that he has to fly around the country and be arguing before these courts and what have you. It's just not fair. It's fundamentally wrong. Again, the idea was that I decided that I will drive here because I didn't want to go through the hassle of the time it's going to take to fly over from Detroit to Cincinnati. And that's the kind of conscious decision in addition to the fact that being, as Your Honor basically labeled a terrorist, and the fact that they put on your boarding pass SSSS, the four S's. I mean, literally, and for Brother Counsel to say that it's in secret, no one really knows, that's ridiculous. Everyone knows. We have defamatory rules that you can defame an individual just if you say it to one person. In these particular circumstances, these individuals are talking to the person behind the counter, the person behind them on the line that's waiting behind to be checked in, the family members, possibly a colleague, possibly a business individual partner that you're flying together with. All sorts of individuals are able to see that you're being singled out, and it's defamatory, it's hurtful, and it truly strikes at the core of our democratic way. Is there any further questions Your Honor? Apparently not. Thank you very much, appreciate your argument. There being no further cases for argument, court may be adjourned.